IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON R. BAIRD | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 17-4792 |
| 1600 CHURCH ROAD CONDOMINIUM | : |
| ASSOCIATION | : |

**MEMORANDUM**

**SURRICK, J.**                                                                         **NOVEMBER 17 , 2017**

      Presently before the Court is Plaintiff Sharon R. Baird's request for injunctive relief. For the following reasons, injunctive relief will be denied and the case will be dismissed.

**I. BACKGROUND**

      This action centers on a dispute between a condominium association and one of its condominium unit owners. Plaintiff Sharon R. Baird contests enforcement of a state court order requiring her to remove her two adult male Chihuahuas from her condominium unit, in accordance with the no-canine policy of Defendant, 1600 Church Road Condominium Association. Plaintiff contends that enforcement of the state court order violates her rights under the Americans with Disabilities Act ("ADA") because her Chihuahuas serve as emotional support dogs, as prescribed by her physicians. As set forth below, the ADA does not apply to Plaintiff's grievances. Even if it did, emotional support dogs are not protected by the ADA. In addition, although Plaintiff's allegations would have been more appropriately asserted under the Fair Housing Act ("FHA"), the evidence in the record nevertheless fails to establish a claim under the FHA.

## A. Factual Background

Plaintiff suffers from panic attacks. (Oct. 25, 2017 Hr'g Tr. 20.) She was first diagnosed in 2000, and is prescribed medication by Dr. Kenneth Kron. (*Id*. at 19-20.) Plaintiff testified that the panic attacks and stress adversely affect her ability to sleep. (*Id*. at 22.)

Plaintiff has two male Chihuahua dogs that "go everywhere" and "sleep with" her. (*Id*. at 20.) Plaintiff testified that at the time that she moved into her condominium unit in November 2005, she provided the Condominium Association with doctors' letters from Creek Wood, a clinic where she was treated for her panic attacks, and from Dr. Kron regarding the necessity for the dogs. (*Id*. at 20, 27.)[1] Plaintiff further testified that Creek Wood has since closed its business, that her file there is unobtainable, and that the doctors' notes on file with the Condominium Association were burned in a fire. (*Id*. at 20, 28.)[2] The Manager for the Condominium Association, Gail Meehan, testified that there was a fire at the condominium building in 2012, however, none of the condominium unit owners' files, including Plaintiff's, were destroyed in the fire. (Oct. 25 Hr'g Tr. 65.) She also testified that Plaintiff's file does not contain letters from any doctors concerning her condition or the recommendation of emotional support dogs. (*Id*. at 65-66.) Finally, Ms. Meehan testified that Plaintiff never advised the Condominium Association that she needed an emotional support animal. (*Id*. at 66.)

Although Plaintiff was unable to present the two doctors' letters that she alleges she provided to the Condominium Association, she did present a joint letter from Dr. Kron and Maris H. Menin, LCSW, of the Philmont Guidance Center, dated May 23, 2016. The letter states:

---

[1] Plaintiff testified that the purpose of the letters was so that the dogs could accompany Plaintiff on the bus, on the train, into restaurants, and into the mall. (Oct. 25 Hr'g Tr. 28.)

[2] Plaintiff alleges that her condominium unit file contained the two doctors' notes, and that her file was housed in Building NB, which burned down in a fire in 2012. (Oct. 25 Hr'g Tr. 28.) Plaintiff did not recall specifically the name of the woman she gave the letters to, but believes her name was Helen or Mindy. (*Id*.)

> Ms. Sharon Baird is a patient of mine who is being treated for mental health issues as defined by the DSM 5.
>
> An emotional support animal is recommended to help manage her mental health symptoms by emotional stability and to meet the requirements of activities of daily living.

(May 23 Ltr., Pl.'s Ex. 1.)

Dr. Kron testified at the November 7, 2017 hearing. Dr. Kron refused to comment about the content of the May 23 Letter, and merely offered that Ms. Menin asked him to co-sign the letter with her. Dr. Kron also could not recall the condition for which he treated Plaintiff.[3] He did testify, however, that "Ms. Baird gets a great deal of satisfaction from having the" Chihuahuas as pets. (Nov. 7 Hr'g Tr. 28.) He further stated that he believed the dogs are "helpful and probably necessary for [Plaintiff's] mental health" because "if she lost the dogs, [] she would grieve for them the same as if the dogs died." (*Id*. at 29.) Finally, he testified that "animals are good for her" and are also "good for people." (*Id*.)

### B. Procedural History

On October 2, 2017, to initiate this action, Plaintiff filed a Petition for a Temporary Restraining Order.[4] No complaint was filed. Plaintiff's Petition alleges that a state court order enjoining her from keeping dogs at her condominium unit violates the ADA because it infringes

---

[3] Dr. Kron was unable to review Plaintiff's file prior to the hearing. He stated that had he had an opportunity to review the file, he would have been in a better position to offer testimony about the specifics of Plaintiff's condition. (Nov. 7 Hr'g Tr. 29 (Dr. Kron: "I haven't seen the record, and my memory does not function to allow me to remember the diagnosis.").) Plaintiff's counsel represented to the Court that there was a misunderstanding about the location of Plaintiff's file. (*Id*. at 5, 29.)

[4] The case was originally filed as a miscellaneous action (Misc. Case No. 17-mc-166) upon Plaintiff's filing of a petition for a restraining order. When Plaintiff filed the Complaint on October 19, 2017, the case was assigned a civil action number (Case No. 17-4792).

on her right to have an emotional support dog as an accommodation for her disability, as prescribed by her physician.

A hearing was held on October 11, 2017. Prior to the hearing, the Condominium Association filed a Motion to Dismiss contending, *inter alia*, that Plaintiff's Petition should be dismissed as procedurally improper since Plaintiff failed to properly initiate the action by the filing of a complaint.[5] During the hearing, the parties agreed to maintain the status quo in order to give Plaintiff time to file a complaint. Plaintiff filed a Complaint on October 19, 2017. On October 25, 2017, we entered an Order denying the Condominium Association's Motion to Dismiss.

On October 25, 2017, a hearing was held on Plaintiff's request for injunctive relief. During this hearing, Plaintiff testified on her own behalf, but offered no expert medical evidence or testimony. Counsel for Plaintiff represented that they were unable to secure the attendance of Plaintiff's treating physician, Dr. Kenneth Kron, at this hearing. Plaintiff requested additional time to subpoena Dr. Kron. The Court granted this request and continued the hearing on the request for a preliminary injunction until November 7, 2017.

At the November 7, 2017 hearing, the Court gave notice to the parties that, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the hearing would be consolidated with the

---

[5] Defendant also argued that the Court lacked jurisdiction over the action under the *Rooker-Feldman* doctrine. Specifically, it contended that the issue of whether Plaintiff was permitted to have dogs in her condominium unit was pending before the state court, which divested this Court of jurisdiction. The Court later determined that since the action before it involved a federal statute, the ADA, and because the issue of whether the dogs were protected as emotional support dogs was not before the state court, the *Rooker-Feldman* doctrine did not preclude jurisdiction.

4

hearing on the merits of the Complaint.[6] No party lodged an objection to this consolidation. Dr. Kron appeared and testified.[7] The Court took the matter under advisement.

## II.    LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). It is the movant's burden to establish that a preliminary injunction is warranted. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 90 (3d Cir. 1992). Failure to establish any of these elements "renders a preliminary injunction inappropriate." *NutraSweet*, 176 F.3d at 153.

## III.   DISCUSSION

Plaintiff's Complaint, although not a model of clarity, appears to assert a claim under the ADA.[8] She alleges that she "suffers from a disability recognized under the [ADA], the full details of said disability extend beyond mere anxiety attacks and the medical file revealing same . . . ." (Compl. ¶ 5.) In addition, Plaintiff alleges that her two Chihuahua dogs "provide emotional support to [her] in her new unmarried status, continue[] to do so to this day, and said

---

[6] The authority to grant preliminary injunctions is derived from Rule 65 of the Federal Rules of Civil Procedure. Under Rule 65(a)(2), a district court may, "[b]efore or after the hearing on a motion for a preliminary injunction," "advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2).

[7] Dr. Kron insisted that he not be offered as an expert witness in Psychiatry in light of the fact that he never obtained board certification. The Court permitted Dr. Kron to testify as an expert medical doctor. (Nov. 7 Hr'g Tr. 24.)

[8] Plaintiff also appears to assert a claim under the Dragonetti Act, a Pennsylvania statute that imposes liability on individuals for wrongful use of civil proceedings. 42 Pa. Cons. Stat. Ann. § 8351(a). (*See* Compl. ¶¶ 6-7.)

5

positive emotional support was, and continues to be, noted by her therapists, including her Psychiatrist." (*Id.* ¶ 4.)

      **A.**      **Plaintiff's Claim Under the ADA**

The ADA does not apply to Plaintiff's claims. Generally, Title I of the ADA prohibits disability discrimination in employment. *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("Terms and conditions of employment are covered under Title I [of the ADA]"). This is not an employment action. Title II of the ADA focuses on "disability discrimination in the provision of public services." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Specifically, Title II prohibits disability discrimination in services, programs, and activities provided by state and local governments. This action is against a private condominium association and does not relate to the provision of services by state or local governments. Title III of the ADA applies to discriminatory acts that prevent disabled individuals from accessing "goods, services, facilities, privileges, advantages, or accommodations" found in "a place of public accommodation." 42 U.S.C. § 12182(a). This action does not involve allegations of discrimination with respect to places of public accommodation.

Even if the ADA did apply here, the ADA does not provide protection for emotional therapy dogs as accommodations for disabilities. Under the ADA, service animals may serve as appropriate accommodations for individuals with disabilities. However, emotional support or emotional therapy dogs do not qualify as service animals under the ADA. *Houston v. DTN Operating Co., LLC*, No. 17-00035, 2017 WL 4653246, at *6 (E.D. Tex. Oct. 17, 2017) ("An animal that simply provides comfort or reassurance is equivalent to a household pet, and does not qualify as a service animal under the ADA." (quoting *Rose v. Springfield-Green Cnty. Health Dep't*, 668 F. Supp. 2d 1206, 1215 (W.D. Mo. 2009))).

In fact, the ADA Regulations explicitly exclude emotional support animals from the definition of a service dog. The ADA Regulations state:

> Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. . . . The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal's presence <u>and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition.</u>

28 C.F.R. § 35.104 (emphasis added).

### B. Even if Plaintiff Had Brought a Claim Under the FHA, it Would Fail

Plaintiff's claims would have been more properly asserted under the FHA. The FHA bars discriminatory housing practices due to disabilities. Specifically, the FHA makes it unlawful to "discriminate against an individual in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a handicap." 42 U.S.C. § 3604(f)(2). Discrimination includes refusing to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).[9]

---

[9] Generally, under § 3604 of the FHA, a plaintiff "may bring three general types of claims: (1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims, both of which arise under § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)." *Cmty. Srvs. v. Wind Gap Mut. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005) (citation omitted).

An emotional support dog can constitute a reasonable accommodation for purposes of the FHA. *See Castillo Condo. Ass'n v. U.S. Dep't of Hous. & Urban Dev.*, 821 F.3d 92, 98 (1st Cir. 2016) (concluding that emotional support dog was a reasonable accommodation for condominium owner who suffered from anxiety and depression but was not permitted to have pets in condominium); *Sanzaro v. Ardiente Homeowners Ass'n LLC*, 21 F. Supp. 3d 1109, 1116 (D. Nev. 2014) ("Animals may be reasonable accommodations, provided the animal performs a function that provides a necessary benefit or aid to a handicapped individual."); *Ayyad-Ramallo v. Marine Terrace Assocs. LLC*, No. 13- 7038, 2014 WL 2993448, at *4-7 (E.D.N.Y. July 2, 2014).

The United States Department of Housing and Urban Development ("HUD") issued guidance in 2013 regarding service animals and assistance animals for individuals with disabilities under the FHA. *See* FHEO Notice-2013-01 (Issued April 25, 2013). The guidance document states:

> An assistance animal is not a pet. It is an animal that works, provides assistance, or performs tasks for the benefit of a person with a disability, or provides emotional support that alleviates one or more identified symptoms or effects of a person's disability. Assistance animals perform many disability-related functions, including but not limited to, guiding individuals who are blind or have low vision, alerting individuals who are deaf or hard of hearing to sounds, providing protection or rescue assistance, pulling a wheelchair, fetching items, alerting persons to impending seizures, <u>or providing emotional support to persons with disabilities who have a disability-related need for such support</u>. For purposes of reasonable accommodation requests, neither the [Fair Housing Act] nor Section 504 requires an assistance animal to be individually trained or certified.

*Id*. (emphasis added).

To establish a claim for the failure to provide a reasonable accommodation under the FHA, a plaintiff must establish: (1) that she is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably have known of her handicap; (3)

that her emotional support animals or other accommodation is reasonable and necessary to afford her an equal opportunity to use and enjoy her dwelling; and (4) that the defendant nevertheless refused to provide a reasonable accommodation. *Castillo*, 821 F.3d at 98.

Handicap is defined as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); 24 C.F.R. § 100.201. "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b).

If a plaintiff has made this prima facie showing of a failure to provide a reasonable accommodation, the burden then shifts to the defendant to demonstrate that the requested accommodation was unreasonable. *Nelson v. Long Reef Condo. Homeowners Ass'n*, No. 11-0051, 2016 WL 4154708, at *16-19 (D.V.I. Aug. 5, 2016) (citing *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002)). The 2013 HUD guidance states that if a plaintiff meets this initial burden, the housing providers must alter their pet policy and provide the reasonable accommodation "unless doing so would impose an undue financial and administrative burden or would fundamentally alter the nature of the housing provider's services." FHEO Notice-2013-01. Housing providers may also deny the request for a reasonable accommodation if:

> (1) <u>the specific assistance animal</u> in question poses a direct threat to the health or safety of others that cannot be reduced or eliminated by another reasonable accommodation, or (2) <u>the specific assistance animal</u> in question would cause substantial physical damage to the property of others that cannot be reduced or eliminated by another reasonable accommodation.

*Id*. (emphasis in original).

Applying these standards to the record before us, it is apparent that even if Plaintiff had brought a claim under the FHA, she would not have met her burden in establishing her claim. In particular, Plaintiff failed to show that she suffers from a handicap. She presented the letter from Dr. Kron stating that she suffers from "mental health issues." (May 23 Ltr.) Although Plaintiff testified specifically that she suffers from panic attacks, there was no medical evidence or expert testimony offered to substantiate this testimony. In addition, to establish a claim under the FHA, Plaintiff would have also needed to present evidence that her panic attacks substantially limit one or more major life activities. Plaintiff testified that her sleep was affected by her panic attacks. However, she did not testify specifically about how it was affected, or whether it was "substantially" affected by her panic attacks, and she presented no expert testimony on this issue.

In addition, Plaintiff failed to present conclusive evidence that the Condominium Association knew or should have known about her anxiety. *See Castillo*, 821 F.3d at 98 (concluding that evidence established an accommodation claim under the FHA where it was clear that the condominium association knew about the condominium owner's anxiety and depression because they were on notice of it). Plaintiff testified that she provided doctors' notes recommending the use of emotional support dogs to the Condominium Association, and that those notes were burned in a fire in 2012. However, the Condominium Association Manager testified to the contrary, stating that the files were not burned and that the Condominium Association was never put on notice that Plaintiff required emotional support dogs as an accommodation. It is Plaintiff's burden to establish her claim. Plaintiff's pleadings and her

proof on each element of an FHA claim were lacking.  If Plaintiff intended to assert a claim under the FHA, she failed to meet her burden in doing so.[10]

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's request for injunctive relief will be denied, and the case will be dismissed

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**

---

[10] Having dismissed the one claim over which we have original jurisdiction—the ADA claim—we decline to exercise supplemental jurisdiction over the state law Dragonetti Act claim. 28 U.S.C. § 1367(c)(3).